Case number 241201, Mike Pop v. Brookfield Chrysler Dodge Jeep Inc, et al. Argument not to exceed 15 minutes per side. Ms. Masserton, you may proceed for the appellate. May it please the court, Mary Masseron on behalf of defendants appellants Gregory Gunther and Anthony Turner, I'd like to reserve four minutes for rebuttal. This qualified immunity appeal challenges the district court's denial of a motion to dismiss brought by sheriffs, deputies Gunther and Turner because Pops failed to state a claim for illegal search and seizure since the video shows that they diffused the situation and received his agreement to voluntarily surrender the vehicle before stepping on or driving on or facilitating a tow truck's driving on to his property. And qualified immunity applies under the second term because no clearly established law would have shown these sheriff's deputies or any reasonable officer that they should have known that Pops verbal and gestural expressions of did not amount to valid consent. And based on those two points, a reversal is in order. First of all, it would still be true if the officers knew and had reasonable cause to believe that Mr. Pop legitimately had possession of the vehicle and was legally entitled to possession at the time that the officers took the actions that they did. I understand the import of the question and the arguments in the opposing brief. In this case, I don't believe that. I would say no. The officers were relying on the Benton Township Police Department and also a lien. So they were relying on the police department? They were relying on a fellow police department which said to them, there's a lien, this is stolen, we want you to go out and make sure there's a peaceful way of getting possession of this vehicle. That was why they went. Was it the case that they knew that the source of the lien was the dealership, the car dealership with whom there was something in the nature of a civil dispute as to whether the vehicle should be returned or not? In other words, the lien didn't originate with law enforcement. It was the dealership that asked that the lien be placed there. And if the officers were aware of that, would that make a difference? I don't think it makes a difference with respect to these sheriff's deputies, no. Because they were relying on, they're not the judge, they're not lawyers. There's a lien which was out there. They get a request from a fellow law enforcement agency saying you need to go out. We want to have a peaceful, low conflict taking of this vehicle. We believe we're entitled to it. The officers tell the deputies that. The deputies go out, as deputies do, and they're trying to facilitate a peaceful seizure of this vehicle by persuading Mr. Popp to voluntarily surrender it. He does so. And they're entitled to rely on that information. They're not obligated to do a deep investigation or to put themselves in the judge's hat. They're saying, okay, the courts are going to protect you. But right now, there's a lien. We understand this is a stolen vehicle. We've been advised to try to get you to voluntarily surrender it. We think you'll be better off if you do. And that certainly is true. Anybody driving a car, which is listed in the lien as stolen, would risk being incarcerated wherever they were stopped in the state. So they're trying to move the situation forward. And I think in that circumstance, they were entitled to rely on his voluntary surrender. That's the other issue, as to whether it was voluntary. Mr. Popp claims he relinquished the vehicle as a result of being threatened with arrest and other dire consequences by the officers. How does that figure into your argument? Well, the video, first of all, there's no argument that the video doesn't accurately portray what happened. There's a problem with a case that Judge Yonkers did not review the body cam video. Before we go to that, could you finish your answer to my question? I would say this. The video makes clear that it was a voluntary surrender. And I understand the argument opposing counsel is making that it wasn't voluntary. But if you look at the circumstances, the facts, all of which are apparent from the complaint in the video, there is no case that I'm aware of that would suggest a 14-minute interchange while someone is with their family, not incarcerated, not arrested, not even in a policeman's car, a sheriff's car, and is told, oh, no, we're not taking you to jail. We want you to consent. We think it would be best for you. That that amounts to enough to be duress. And I was rereading cases yesterday. And the one that struck me is the U.S. Supreme Court case, Florida v. Rodriguez. There, they chase this guy in the airport. They take him away from the public, away from everybody. They question him at length. Eventually, he says, okay, and consents. And the Supreme Court said, even with all of those facts, that's not enough to show duress. Here, the courts have said, and this court said in U.S. v. Salvo and U.S. v. Watson, that given the option of consent or saying if you don't consent, we're going to get a warrant, that's not enough to show duress. And in U.S. v. Charlton, this court said the fact that your family is distressed, that's not enough to constitute duress. So all of the circumstances here show an interaction, very short, not in a jail. No one touched Mr. Popp, laid hands on him. No one waved a weapon around. No one took any of the normal steps that you would expect to see in a case where a court holds that the consent was with duress. I think Judge Griffin has a question for you. My question is, one of the problems with this denial of qualified immunity is that Judge Yonkers did not review the body cam video. I should know that. I apologize. I don't, but I'll... If I understand it, he didn't. He just relied on the allegations contained in the complaint. Yeah. But the body cam video was submitted. Correct. Not in connection with the motion to dismiss. And our law is, if the video evidence blatantly contradicts allegations in the complaint, the allegations in the complaint need not be accepted. I mean, that's the law, right? Correct. All right. Here, they make allegations in the complaint that the officers threatened to arrest him if he did not consent, and the video does not show that. The video shows that they told him that if he drove the car and was stopped, the other police would likely arrest him because the car was reported as stolen, and that if you keep possession of a car and you drive it, you run the risk that you will be stopped and arrested for driving a stolen vehicle, so you probably should consent to give us the vehicle now. Anyway, the bottom line is this 1983 case, the constitutional violation is supposedly an illegal search and seizure, right? Right. Really, it's just... And your defense is, no, he consented to it, and a reasonable law, it's really not a seizure anyway. I mean, they didn't seize the car. Right. What did he do? His son drove it away, I guess it was. His son tried to start it and couldn't get it started. And then they towed it away. And so they tried to... And he consented to tow it away. And they consented to a tow truck towing it away. All right. Correct. So anyway, your argument is, one, there's no Fourth Amendment violation, two, even if there were, that under the circumstances, it is not clearly established to all reasonable officers that this is a violation of the Fourth Amendment, that qualified immunity protects all but the blatantly incompetent and whatever that language is. So you've got the two defenses here. Exactly, exactly. And we think they're pretty strong. No, I noticed that the district judge said to the parties in making his ruling that even though qualified immunity was... He was declining to confer qualified immunity at that time that this was at the very outset of the proceedings. And it was without prejudice, and the parties were invited to come back before the court as further information and facts were developed. And he would entertain the motion yet again. Did you go back before him subsequently pursuant to that invitation? No, Your Honor. And the reason is because, as this court had said in Belvey Southfield and a number of other cases, but the discussion in Belvey Southfield is probably one of the most developed, that the principles of immunity really are intended to prevent the enormous cost and distraction and all of the things that come with defending a lawsuit. And that these cases, when they can be decided at the earliest possible point, as we believe this one can, should be decided at the earliest possible point. And based on this court's precedent in Bell and other cases saying that a video should be considered even at the motion to dismiss stage, we believe the court... Well, I also don't know what further evidence could possibly be admitted. The entire episode is on the body cam video from start to finish. So everything that's in dispute is recorded. So there's nothing else. There's no fact question about what happened.  Were there questions as to what the officers knew and what their instructions were when they went to the place of the incident? It's not that further information was irrelevant, but go ahead. Well, further information really wouldn't have shed light on the interaction between the officer and Pott, in my view. The question is whether the officers reasonably believed they had consent. And based on his saying to his son, first his saying, okay, you go get it, and the son getting it, and then his saying, okay, we'll have the tow truck come, that's consent. And further discovery would have cost a lot of money, and there would have been a lot of time spent by the lawyers in the court and the officers. But at the end of the day... I'm not criticizing your approach. I was just asking if you went back to the judge a second time. No, we were hoping that we could come to this court, and we are still hoping that we could come to this court and get a reversal so that all of that additional cost and time and resources won't be necessary. I think that I'm over my time here, so perhaps I'll save the rest of my time for rebuttal. All right. Thank you. Thank you. Good morning, your honors. If it please the court, Stephen VanderArk on behalf of Mike Pott, the plaintiff, and Appleby in this case. The issue before this court is whether the facts contained in the complaint, taken as true in all inferences, sets forth a constitutional violation which was clearly established such that a reasonable law officer at the time of the events would have fair warning that his conduct was violating Mr. Pott's constitutional right. And what is obviously somewhat unusual in this case, in a 12b6 motion in the trial court, is that both parties submitted videos on the basis, the defendants, that presumably would blatantly contradict what was contained in our complaint. And we even submitted a video of activity of a six-minute video prior to the on-site video, the interaction with Mr. Pott. That is unusual, obviously, in a case where both parties don't agree on what the video shows. The defendants say that this video shows a voluntary and freely given consent to the seizure of Mr. Pott's Jeep, which was on his property. And you really, your honors, you don't need any more than watching that video. Our position is that video, it demonstrates that for 14 minutes, Mr. Pott was threatened with arrest, and Judge Griffin... He was not threatened with arrest by these officers. I mean, I watched the video. I actually looked to see... Well, and again, I watched the video several times. Yeah, sure. And I put in my the best I could of what I heard. And at six minutes into the 14 minutes, Deputy Turner says to Mike Pott, I will see you in court because they are going to send somebody over and take you to jail. Mr. Pott responds, just take me to jail already. I was in jail for this problem. And at another point, Mr. Pott said... Actually, in reference to if you drive the vehicle, and you're stopped, they'll, you know, they're going to arrest you. And not that the officers themselves are going to arrest you right now, but you run this risk, and they is somebody else, not them. I mean, I think your complaint alleges that these officers themselves said, we will arrest you right now if you don't consent to it. And that's not what they said. They referred to third people, third persons, I think. Well, at least that's the way I read it. This is watching the same video. Oh, okay. We see and hear different things. And again, the officers did say, not only initially, but when Mike Pott said, in fact, I think on the video, he actually offered his hand, take me to jail already. They said, we don't want to take you to jail. We don't want to take you to jail, implying potentially, but we will if we have to. It's our position that there was Mr. Pott having been arrested for basically stealing his own car approximately a month before he was booked, he was searched, he was put on a restrictive bond, that he had a curfew. All of these things happened less than a month before. And what Mr. Pott was hearing, how he reacted to, comes into our position of that what the court has to do in reviewing and a 12b6 motion and whether consent was voluntary or coerced or the product of duress, the court is required under these Zekloff-Bustamante review to not just look at what the officer said, but what was the impact on the person alleged to have voluntarily consent. He had not only been to jail, they took him to jail. He was waiting on, you know, three days from now, he was facing a preliminary examination on a felony charge. And the totality of the circumstances that the court should review in deciding whether this consent was or was voluntary or was coerced requires a review of Mr. Pott's background, his education. Mr. Pott on the video indicates that he came from Romania in the 1980s. There are details and things that are required more discovery, Your Honor, in this case. Excuse me, but it seems to me that while all this may be a part of what was going on in Mr. Pott's mind, that transforms the test for determining whether qualified immunity applies to the I mean, that's not a part of the test, the subjective mindset of the plaintiff. It might make the situation, in fact, more traumatic for Mr. Pott. However, that's not a part of the test that I'm aware of. What do you have to say about, I mean, what's your response to that? Well, it's our response to that is, again, the Bustamante totality of the circumstances analysis. Under those, it is a subjective part of the totality of the circumstances is a subjective impact of what is said to, in this case, Mr. Pott, the psychological impact, Bustamante court says is important. The vulnerability of Mr. Pott at the time when these events were going on and how that's part of the totality of the circumstances that yet needs to be developed. I always thought that a Fourth Amendment analysis is an objective analysis rather than a subjective analysis. Am I wrong about that? Well, as a general rule, that is true. But when totality of the circumstances is an issue, and not just as the Supreme Court has indicated, totality of the circumstances is the standard for valid consent, coerced consent, but in all other areas where totality is used as a probable cause and unrest. The court said, this court has said, you've got to look at the totality of the circumstances. What was the impact? What was going on in the brain, so to speak, of the person who the officers who have the burden to show by clear evidence that it was voluntary, what was going on and what impact it was having on this. And Bustamante said, his educational are subjective going on in the mind of the person who these officers are saying eventually gave voluntary consent to seize that Jeep from the property. Besides the hurdle of establishing a Fourth Amendment violation, you also have to establish that the violation is clearly established that all except incompetent officers would know that they had committed a Fourth Amendment violation. What's your best case to show that this is clearly established, this situation? Well, Your Honors, in looking at clearly established and whether or not there is present, you can obviously go from the generic. I mean, is it clearly established that a warrant is required to seize property unless there's an exception? And one of the exceptions obviously being consent. I mean, it's clearly established that if you coerce consent or there is duress, there's a constitutional violation. But then we can then move from that more generic to the cases that I cited, one of which is the United States Supreme Court decision in Sotal. In that particular case, what occurred there was police officers went to assist in a civil seizure or possession of a mobile home. And as the court's aware, police officers are allowed to stand by. They can come and watch to keep the peace when there's going to be a civil repossession, which is exactly what the appellants have said occurred in this case, a civil repossession. And in Sotal, what they did, the court said, is that what happened is the police officers came to keep the peace. But what happened was, is the police officers helped the mobile home owner actually unhook the mobile home and the entire home was seized. And the argument of the police officers in Sotal was, wait a minute, wait a minute. We get qualified immunity because we never went into the house. We never conducted a search that implicates the Fourth Amendment. So if we don't go into the house, we're entitled to qualified immunity. And the United States Supreme Court said, no, wait a minute. There was no search here. This was a seizure case. In fact, you seized the entire house officers. So the intrusion, the search, the going onto private property is not the issue. If officers move from their keep the peace rule and actively engage in the actual seizure, or in some cases a search, at a seizure, the Supreme Court says, under those circumstances, officers, you need to understand the Fourth Amendment is being implicated. And if you go in and you see something without a warrant and without any exception, officers, that is, you are not entitled to qualified immunity. So any, I mean, your argument is any illegal seizure by the police is, it's clearly established and there's no qualified immunity? Oh, no. In all circumstances? No, it clearly is. The circumstances have to be clearly established that all reasonable officers would know that in a circumstance like this, that I guess you're arguing this consent was ambiguous or whatever, that all reasonable officers would know that when you have like an ambiguous consent, that if the seizure occurs, then there's no qualified immunity. But I don't know a case like that. I'm just asking if you know a case. Well, a Sixth Circuit case, a case in this, following the total United States opinion, is Cochran v. Griffin, I'm sorry, Gilliam, a 2011 case in this court. And in that case, we're getting closer to this, what are the police officers, you have fair warning about how you handle a civil repossession when you're standing by. In that particular case, there was an order, or at least a magistrate signed an order to evict someone from their home. They called the police to come and stand by, no breach of the peace. But what happened was there was no order that allowed the landlord to seize all the persons. So are you just saying you don't have another consent case? I mean, this centers around whether he consented or not. And you don't have another case like this, where there's arguments on both sides of whether there was a consent to the seizure. Well, I'd have to go back to Schneckloth, Your Honor. You got to go back to what? Schneckloth v. Bustamante, Supreme Court, 1973, that set the totality of the circumstances standard as to what needs to be looked at. These are general cases, like the general principles is what you're relying on. Yes. And again, I cited, and they objected, an Eastern District of Michigan case involving a specifically what happened here to Mr. Popp, which was a spot delivery by a dealership, police involvement in seizing the individual's car at the dealership. And I understand, it's not precedent that's going to be used in an Eastern District case, but it's an opinion that deals specifically with facts like this, where that court, I think, obviously persuasively, found that there was no qualified immunity under those circumstances. I see my time is almost up, and unless the court has any other questions, I'll conclude. All right. Thank you. Thank you, Your Honor. A couple of quick points on rebuttal. First of all, both the Fourth Amendment analysis and qualified immunity analysis look objectively not into the mind of the plaintiff. Secondly, the video does show the officers talked about they, if you don't consent, they, the other police department, are going to pursue this. They will get a warrant. At no time, I don't believe, did the officers ever say, we are going to arrest you. In fact, that really even further undercuts the totality of circumstances argument, because they kept saying, no, we don't want to arrest you. We're trying to help you do the best thing. And you can pursue this and get your car back, but there's this lien in this police department, and they've asked us to come. We think the best thing is for you to voluntarily surrender the car. And Mr. Popps said he would. And he not only said he would, he engaged in activity to facilitate the tow truck and open the gate and so forth. So there are any, I don't think there's any reasonable question about the consent, but certainly when you get to the qualified immunity prong, there's no case law that I'm aware of that would suggest an officer should know when someone makes those gestures, says those words, does those actions, that somehow that consent isn't valid. This court said in one of its cases, I apologize, I can't remember the name. I'm sure it's in my brief. The law enforcement need not be clairvoyant. And when they have all these outer objective signs that would tell them this is a valid consent, they're entitled to rely on that. Qualified immunity provides a big protective area for those reasonable, even if mistaken, and I'm not conceding it was mistaken, but even if there was some question about it, the officers were entitled to rely on it. Let me talk just briefly about the McFarland District Court case, which obviously can't be used for qualified immunity because it isn't even a single Sixth Circuit case. And the Cochran and Sodal case, and that line of cases, with those cases did not involve consent. They involved questions about where an officer went out and participated in the illegal seizure by using their authority as officers or by physically helping to seize without any consent. And that's not the situation here. This would be an entirely different case if consent wasn't the linchpin, but it is. And so those cases just are really not helpful. I understand Mr. Poppett had been arrested a month before in connection with this particular automobile transaction. Do you know whether or not the officers involved in this incident were aware of that prior arrest of Mr. Popp? Well, he told them, certainly. When these deputies came out, Mr. Popp told them, but I'm not aware of anything beyond that. That's what's in the record. All right. Thank you. Thank you. Okay. Thank you very much. And the case is submitted.